# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENNIS FRANK DICKERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4651** |
| **SHERIFF RODNEY J. STRAIN, ET AL.** | **SECTION "S" (1)** |

## ORDER AND REASONS

Plaintiff, Dennis Frank Dickerson, filed this *pro se* and *in forma pauperis* complaint claiming that he has been denied constitutionally adequate medical care while confined at the St. Tammany Parish Jail. He originally named as defendants Sheriff Rodney J. Strain, Dr. Richard Inglese, and Dr. French; however, plaintiff subsequently moved to amend the complaint to add Warden Al Strain as a defendant and to voluntarily dismiss the claim against the Sheriff. Both of those motions were granted.[1] The parties have now consented to the jurisdiction of the undersigned United States Magistrate Judge.[2]

### I. Facts

Plaintiff alleges that he was booked into the St. Tammany Parish Jail on July 31, 2008. He claims that he filed a sick call slip and was seen by Dr. French at the jail on August 5, 2008. The doctor prescribed Gabapentin 900 mg., three times per day, for pain and Flexeril 10 mg., three times per day, for muscle spasms arising from broken neck vertebrae at C2, C5 and C7.

---

[1] Rec. Docs. 21 and 33.

[2] Rec. Doc. 30.

Plaintiff further alleges that, on August 10, 2008, he slipped and fell on a wet floor at the jail. He claims that he "busted" the back of his head and re-injured his neck. He states that he was taken to the St. Tammany Parish Hospital where he received five staples for the injury to his head. He further claims that he continues to suffer from chronic pain and severe muscle spasms.

Plaintiff also alleges that, on August 12, 2008, he injured his left wrist at the jail. He claims that he was taken to the prison medical unit where he was seen by Dr. Inglese. Plaintiff alleges that Dr. Inglese discontinued the Flexeril and changed the Gabapentin to 300 mg., three times per day, which has caused him to suffer pain and muscle spasms.

Plaintiff further claims that, between August 12, 2008, and September 3, 2008, Dr. Inglese and Dr. French failed to adequately treat him for, and diagnose the source of, his chronic pain and muscle spasms. Plaintiff states that, after he filed another sick call on September 3, 2008, he was seen by Dr. Inglese, who discontinued all of his medication. Plaintiff claims that he suffered with pain and spasms for another 23 days, until September 26, 2008, when Dr. Inglese prescribed Tylenol and Motrin. He alleges that this medication was prescribed after he and his mother filed complaints about his medical care.

## II. Motion for Summary Judgment

Dr. Inglese, Dr. French, and Warden Strain have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[3] Plaintiff has opposed that motion.[4]

---

[3] Rec. Docs. 49 and 56.

[4] Rec. Docs. 53, 59, and 60.

## A. Standards of Review

The Court may grant summary judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion

for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

### B. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Defendants argue that they are entitled to judgment as a matter of law because plaintiff failed to exhaust his administrative remedies before filing this lawsuit. In their supplemental memorandum in support of their motion for summary judgment,[5] defendants note that, even if plaintiff *initiated* his administrative remedies *prior* to filing suit as he claims, those remedies clearly were not *completed* until sometime *after* the complaint was filed. As defendants correctly note, that fact would normally be cause for dismissal, as the PLRA "plainly requires that administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending." Wendell

---

[5] Rec. Doc. 56.

v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (emphasis in original). However, for the following reasons, the Court declines to apply that general rule in the instant case.

First, the defect has arguably been cured in this proceeding. Based on the partially legible receipt stamp on the final third-step appeal, it appears that plaintiff submitted that appeal in October of 2008.[6] At that point, the Sheriff had no more than forty-five days to respond to the appeal.[7] Accordingly, depending on the date of actual submission, the Sheriff had only until sometime in late November or December of 2008 to respond. When the Sheriff failed to respond within that time, plaintiff's administrative remedies were considered exhausted. See Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998) ("[A]vailable administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired."); see also Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004). In the instant case, in February of 2009, long *after* his administrative remedies were exhausted, plaintiff filed a motion for leave to file an amended complaint.[8] The Court granted that unopposed motion.[9] Therefore, it is at least arguable that any exhaustion problem here was resolved by plaintiff's filing of the amended complaint after the exhaustion of his administrative remedies. See Curry v. Scott, 249 F.3d 493, 501 (6th Cir. 2001); but see Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001).

---

[6] Rec. Doc. 56, Exhibit 5.

[7] Rec. Doc. 49, Exhibit D, Affidavit of Deputy Warden Greg Longino, ¶¶ 19 and 21.

[8] Rec. Doc. 19.

[9] Rec. Doc. 21.

Second, in any event, this Court has the authority to proceed on unexhausted claims because the exhaustion requirement is nonjurisdictional. See Johnson v. Johnson, 385 F.3d 503, 522 n. 14 (5th Cir. 2004). "[E]xhaustion requirements may be excused where dismissal would be inefficient and would not further the interest of justice or the purposes of the exhaustion requirement." Johnson v. Ford, 261 Fed. App'x 752, 755 (5th Cir. 2008). Moreover, the United States Fifth Circuit Court of Appeals has recently frowned on the practice of dismissing a complaint based solely on the fact that administrative remedies were ongoing at the time the federal complaint was filed if those remedies were in fact completed after filing. Collins v. Stalder, No. 08-30534, 2009 WL 1833966, at *2 n.11 (5th Cir. June 26, 2009).

In light of the foregoing, and in the interest of judicial economy, the Court finds that justice is better served by simply considering plaintiff's claims on the merits.

## C. Merits

In their motion, defendants alternatively argue that plaintiff's claims fail on the merits. For the following reasons, this Court agrees.

It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). However, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. ... [T]he failure to

alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, it is undisputed that plaintiff suffered severe neck injuries prior to his incarceration and that he has been repeatedly seen in the jail medical department for the "chronic pain" and "muscle spasms" he allegedly still suffers as a result of those injuries. The parties disagree, however, as to whether plaintiff needs drugs, or stronger drugs, to treat his alleged pain and spasms or whether, as Dr. Inglese believes, plaintiff is simply exhibiting drug-seeking behavior resulting from his history of addiction.[10] That ongoing disagreement is reflected in a series of entries

---

[10] In this opinion, the Court focuses on plaintiff's claim against Dr. Inglese, in that it is evident he is the primary defendant. Dr. Inglese is the medical director at the jail and has made the decisions with which plaintiff takes issue. Nevertheless, the Court expressly notes that the claims against Dr. French and Warden Strain are likewise meritless.
   As to Dr. French, plaintiff makes no additional allegations of substance against him, and it appears that he is merely a subordinate of Dr. Inglese.
   As to Warden Strain, plaintiff does not indicate whether he is suing the warden in his official capacity, his individual capacity, or both. Regardless, it is evident that no claim has been stated against Strain.
   It is clear that plaintiff has not stated an official-capacity claim against Strain. "In a suit brought against a municipal official in his official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury." Parm v. Shumate, 513 F.3d 135, 142 (5th Cir. 2007), cert. denied, 129 S.Ct. 42 (2008). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003). Plaintiff does not allege that the inadequate medical care claimed here resulted from a policy or

by Dr. Inglese in plaintiff's medical records.[11]  For example, on September 3, 2008, Dr. Inglese noted:

> Pt here today req. RF of meds for "neck pain." Mr. Dickerson does have an extensive medical history: He was involved in a MVA 10/1/06 & sustained a cervical fx (C7, C5, C2). Pt was rx by Dr. Lee (neurosurgey). His last apt was 3/8/07, but he was arrested 11/07. He did [not] f/u in 4 weeks ... as instructed. (See notes from Dr. Lee.) He had missed other f/us as well. ... At his 3/8/07 apt, Dr. Lee prescribed Norco and Flexeril with NO refills for an acute neck strain – not for chronic pain. Pt was to f/u in 4 wks but never did.
> Pt does [not] do neck exercises daily. He walks well and demonstrates no sig ↓ ROM at neck. Moves both arms well.
> Several of Mr. Dickerson's meds were recently d/c as 3 different inmates reported he was distributing his meds to themselves and other IMs.
> I questioned Mr. Dickerson about this, and he denied the allegations. However, he was very belligerent.

On October 17, 2008, Dr. Inglese noted:

> Mr. Dickerson has completed multiple sick calls, complaints, & grievances complaining that we are inappropriately treating his neck pain/arm pain. He is alleging we are being indifferent to his needs.
> This is not so. Please see 10/3/08 note. Mr. Dickerson is a belligerent, non-compliant pt. On 10/3, I decided not to increase his neurontin (as he requested)

---

custom, much less identify such a policy or custom.

It is likewise clear that plaintiff has not stated an individual-capacity claim against Strain. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff makes no allegations whatsoever against Strain or any involvement by him in plaintiff's medical care. Without such allegations, no individual-capacity claim has been stated against Strain. Although Strain is a supervisor at the jail, that fact alone is insufficient to render him liable for federal civil rights violations allegedly committed by his subordinates under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742.

[11]  Plaintiff's medical records are included in this federal record at Rec. Doc. 32.

> because he was in no objective distress, had good function, <u>admitted</u> to abusing medications <u>in this jail</u>, and was fit enough to start several fights.
>
> Since 10/3, Mr. Dickerson was seen receiving a crushed pill under the door (to his dorm). A deputy witnessed this. Also, on 10/12, Mr. Dickerson assaulted Mr. Chad Perry (an Inmate). Mr. Perry is much larger than Mr. Dickerson, yet Mr. Dickerson was able to hold Mr. Perry down on a bed, twist his head, and bite his nose.

In that same note, Dr. Inglese observed: "He has never reported or demonstrated worrisome features, and if he had, neurosurgical intervention would be the intervention not ↑ neurontin or lortab or flexeril."

Similarly, on October 21, 2008, Dr. Inglese noted:

> Dr. French saw another IM who has been beaten by Mr. Dickerson. In addn, I reviewed the tapes of the large dorm fight that Mr. Dickerson participated in. He was jumping around striking inmates (w/ a crutch). He was quite spry & did [not] appear to be hindered by any pain.
> He <u>does</u> have some chronic problems w/ his neck. He does [not] make a fist all that well & has limited rotation of the neck. However, these problems are stable. There is no report of progressive symptoms. We <u>are</u> treating his illness, and apparently our rx is sufficient given his activity level. With his drug abuse hx, I see no need to ↑ pain meds.
> F/u PRN.

While plaintiff obviously believes that he is not being given the most attentive or best medical care available, that is not the constitutional standard. See <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992) (the fact that medical treatment "may not have been the best money could buy" was insufficient to establish a constitutional violation); <u>McMahon v. Beard</u>, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available). Rather, as noted, the applicable test is whether prison officials were *deliberately indifferent* to plaintiff's serious medical needs.

From the medical records, it is evident that plaintiff cannot establish deliberate indifference, an element essential of his case and on which he bears the burden of proof. His numerous examinations in the jail's medical department and his ongoing treatment disprove any allegation that his medical complaints are being ignored. Moreover, his dissatisfaction and disagreements regarding his medical treatment are of no moment. As the United States Fifth Circuit Court of Appeals has noted: "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (footnote and quotation marks omitted). Generally, neither the fact that a prisoner continues to experience pain despite treatment nor the fact that jail physicians refuse to provide him with the specific pain medications he requests is sufficient to state a constitutional claim. Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); see also Spruill v. Gillis, No. 07-3286, 2009 WL 1470397, at *4 (3rd Cir. May 22, 2009) ("At worst, [prison doctors] were overly suspicious that [the inmate] was engaging in drug-seeking behavior or overdramatizing his level of pain. If so, that does not amount to an Eighth Amendment violation."). Also, the mere fact that another doctor might have reached a different conclusion is not determinative. Differences of opinion among physicians as to the appropriate method of treatment do not constitute deliberate indifference. Campbell v. Martinez, No. Civ. A. 4:03-CV-299-Y, 2003 WL 22410576, at *3 (N.D. Tex. May 14, 2003), aff'd, 96 Fed. App'x 237 (5th Cir. 2004); see also Muse v. Warner, No. 93-2413, 1993 WL 543340 (5th Cir. Dec. 15, 1993 ) ("The

disagreement in diagnosis between the initial doctor and the subsequent doctors does not equal denial of medical care or show deliberate indifference.").

In effect, plaintiff wants this Court to overrule Dr. Inglese's medical judgment. However, a physician's "medical judgments are not to be lightly second-guessed in a federal civil rights action." Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008); see also Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). In this case, the Court declines to take such action based on nothing more than plaintiff's bare, unsupported allegations. Moreover, even if it could ultimately be shown that Dr. Inglese's diagnosis *is* wrong, plaintiff's federal claim would still fail because it is indisputable that an incorrect diagnosis simply does not suffice to state a claim for deliberate indifference. Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, misdiagnosis amounts to nothing more than negligence or malpractice which alone is never sufficient to state a federal claim for constitutionally inadequate medical care. Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999); see also Kelly, 2007 WL 2007992, at *4; Cerna, 2004 WL 42602, at *2. Claims of negligence or malpractice are for the state courts, not a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

Lastly, this Court is aware that plaintiff alleges that Dr. Inglese's actions are motivated by a personal grudge rather than by his medical judgment. However, plaintiff has presented no evidence whatsoever in support of that bald allegation. He cannot transform a deficient claim into an actionable one, or defeat an otherwise meritorious motion for summary judgment, simply by including such a speculative, unsubstantiated assertion.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this ninth day of July, 2009.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**